**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| DEANNE MALEC,                )  | |
|                              )  | CASE NO. 1:13CV626 |
|      Plaintiff,              )  | |
|                              )  | |
|   v.                         )  | MAGISTRATE JUDGE GREG WHITE |
|                              )  | |
| CAROLYN W. COLVIN,           )  | |
|   Acting Commissioner of     )  | **MEMORANDUM OPINION & ORDER** |
|   Social Security,           )  | |
|                              )  | |
|      Defendant.              )  | |

Plaintiff Deanne Malec ("Malec ") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying her claim for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i) and 423 *et seq*.  This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the case is REMANDED for further proceedings consistent with this Opinion.

### I. Procedural History

On March 10, 2010, Malec filed an application for POD and DIB alleging a disability onset date of November 5, 2009 and claiming she was disabled due to mental health problems and depression. (Tr. 153, 189.) She later claimed disability due to acid reflux disease, restless leg syndrome, sciatic nerve pain, lumbar disc herniation, high blood pressure, anxiety, bipolar disorder, a breast mass, and a lung nodule. (Tr. 207.) Her application was denied both initially and upon reconsideration. Malec timely requested an administrative hearing.

On December 9, 2011, an Administrative Law Judge ("ALJ") held a hearing during which Malec, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 34-68.) On December 23, 2011, the ALJ found Malec was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr. 16-28.) The ALJ's decision became final when the Appeals Council denied further review. (Tr. 1-3.)

### II. Evidence

*Personal and Vocational Evidence*

Age forty-six (46) at the time of her administrative hearing, Malec is a "younger" person under social security regulations. *See* 20 C.F.R. § 404.1563(c); Tr. 26, 43. She has a high school education and completed specialized job training to become a nursing assistant. (Tr. 26, 44.) She has past relevant work as a data enterer and telephone order clerk. (Tr. 26, 46, 191.)

*Medical Evidence*[1]

---

[1] As noted above, Malec claims she is disabled due to a variety of physical and mental impairments. As the Court finds remand is necessary on the basis of new and material evidence submitted to the Appeals Council regarding her back and leg pain, this Opinion discusses only the medical evidence with regard to that condition.

In June 2010, Malec underwent a consultative physical examination with Eulogio Sioson, M.D. (Tr. 406-410.) Malec reported she had been having neck and back pains "for many years– found to have scoliosis 8-10 years ago, bulging discs in her neck." (Tr. 406.) She further stated "[s]he has neck pain that goes up and gives her headaches, low back pain that goes down her legs worse walking, going up and down stairs, standing 5 minutes, sitting 30 minutes to an hour." (Tr. 406.) On the date of her examination, she rated her pain as a 7 on a scale of 10. (Tr. 406.) She reported treating her pain with heat and pressure point therapy. (Tr. 406.)

Upon examination, Dr. Sioson noted Malec walked normally with no assistive device and was able to get up and down from the examination table. (Tr. 407.) However, she declined to do heel/toe walking or squatting due to back pain. (Tr. 407.) Dr. Sioson noted Malec had increased lordosis and "marked lower back tenderness." (Tr. 407.) She had negative sitting straight leg testing, but had some pain while lying down at twenty degrees bilaterally. (Tr. 407.) In addition, she exhibited range of motion deficits in her cervical spine; bilateral shoulder; lumbar spine; bilateral knees; and, bilateral hips. (Tr. 409-410.) Dr. Sioson opined Malec would be limited to light or sedentary work. (Tr. 407.)

In July 2010, state agency physician Gary Hinzman, M.D., completed a Physical Residual Functional Capacity Assessment based on a review of Malec's medical records. (Tr. 462-469.) He offered that Malec could stand and/or walk for a total of six hours in an eight hour workday; sit for a total of six hours in an eight hour workday; and, carry 10 pounds frequently and 20 pounds occasionally. (Tr. 463.) He also concluded Malec could climb ramps and stairs frequently, and occasionally climb ladders, ropes, and scaffolds; stoop; kneel; crouch; and, crawl. (Tr. 464.) Finally, he opined Malec could perform frequent overhead reaching and

3

handling/fingering, bilaterally. (Tr. 465.)

In June 2011, Malec presented to Edwin J. Capulong, M.D. at the Cleveland Clinic Center for Spine Health, with complaints of increasing bilateral leg and back pain. (Tr. 496, 499.) She reported a history of scoliosis and an onset of "years ago." (Tr. 496.) Malec described her symptoms as "severe, aching back pain associated with burning and numbness to the legs." (Tr. 496.) She stated her pain was persistent, "worse with standing and walking," and "better with heat." (Tr. 496.) Upon examination, Malec exhibited mild thoracolumbar tenderness. (Tr. 498.)

At a follow up examination on September 5, 2011, Malec reported continuing back and leg pain that is "chronic and has progressed." (Tr. 503-504, 505.) She rated her pain as a 7 on a scale of 10. (Tr. 505.) Dr. Capulong diagnosed lumbar spondylosis; prescribed a trial of Gabapentin; and, recommended physical therapy. (Tr. 504.) Malec underwent an x-ray that same date, which demonstrated multi-level degenerative disc disease and kyphoscoliosis. (Tr. 501.) On October 20, 2011, Malec was sent for an MRI of the lumbar spine due to "low back pain with radiculopathy." (Tr. 513.) The MRI revealed levoscoliosis of the spine centered about L-3; "moderate concentric disk bulge [at L4-L5] with moderate asymmetrically left sided degenerative facet joint arthropathy cause mild left foraminal stenosis;" mild narrowing of the central canal; "left lateral disk bulge [at L5-S1] with moderate asymmetrically left sided degenerative facet joint arthropathy and rostrocaudal facet subluxation cause moderate left foraminal narrowing;" and, a large hiatal hernia. (Tr. 513-514.)

On October 28, 2011, Malec presented to Dr. Capulong for evaluation of the results of her MRI. (Tr. 507.) She complained of "back and left lower extremity pain described as

4

numbing and burning sensation." (Tr. 507.) She reported her "'whole leg' will give out" and described her pain as "unbearable." (Tr. 507.) Dr. Capulong diagnosed Lumbar Disc Herniation, Left L5-S1. (Tr. 508.) He noted Malec was taking Gabapentin and Tramadol and observed these medications "seem[] to be helping somewhat." (Tr. 508.) Dr. Capulong discussed Malec's treatment options (including pharmacologic, interventional, and surgical options) and offered a lumbar epidural injection. (Tr. 508.) According to Dr. Capulong's treatment notes, Malec indicated she did not think the injections would help her pain and requested a referral in order to obtain an opinion regarding back surgery. (Tr. 508.) Dr. Capulong "counseled her that the back pain may not improve after surgery, [but] she still wants to proceed with the appointment." (Tr. 508.)

*Hearing Testimony*

At the December 9, 2011 hearing, Malec testified to the following;

- She is married and has four children, ages 26, 21, 14, and 11. She lives with her husband, three of her children, and her five year old granddaughter. (Tr. 43-44.)

- She graduated from high school and completed job training to become a nursing/medical assistant. (Tr. 44.)

- She worked as a medical assistant in a doctor's office for two years, but left when her husband became very ill and could no longer take care of their children. She stayed home with her family for seven years. (Tr. 61-62.)

- She then worked for seven years at a catalog order company in data entry and as a telephone order clerk. She was laid off in 2009. She received unemployment until her benefits ran out in October 2011. While receiving unemployment, she applied for two jobs each week. She generally applied for customer service jobs. She applied in person, but was never interviewed or hired. (Tr. 46-48.)

- She cannot work because of her depression and anxiety. Her depression makes her feel like "I just shut off" and "stopped functioning entirely." Because of her depression, she is no longer able to go places, visit people, get dressed for the day, go shopping, or get ready for the holidays. (Tr. 48-49.)

- Her physical conditions also prevent her from working. She has difficulty sleeping because of her restless leg syndrome. (Tr. 50-51.) In addition, she experiences pain in her upper and lower back, as well as sciatic nerve pain that goes down her leg. (Tr. 51-52, 56.)

- She was scheduled to have back surgery in January 2012. (Tr. 51.) One of her doctors felt she was not a good candidate for surgery because of her scoliosis and menopause, and because her condition "wasn't bad enough to do surgery." (Tr. 56-57.) However, when her symptoms worsened over time, she went to see a spine specialist. The doctor initially recommended injections. She rejected this advice because the injections would only "mask the pain." She preferred to have surgery to have the underlying "issue corrected." (Tr. 57.)

- She can stand for five to ten minutes before needing to sit down; sit for 20 to 30 minutes before needing to get up; and, walk for five to ten minutes before needing to stop. (Tr. 52-53.) It is difficult for her to lift a gallon of milk. Her hands tremble and she "ends up dropping it." (Tr. 54.) She cannot bend down. (Tr. 52.)

- She takes Neurontin and Ultram for her sciatic and back pain. She also uses a heating pad, and sometimes takes a hot bath to relieve her pain. As a last resort, she will lay down on the hardwood floor and stretch her back. (Tr. 52-55.) The most comfortable position for her is laying down on a heating pad. She does this several times a day for 30 minutes to an hour. (Tr. 58-59.)

The VE testified Malec had past relevant work as a (1) data entry clerk (semi-skilled, sedentary, SVP 4); and, (2) order clerk (semi-skilled, sedentary, SVP 4). (Tr. 62-63.) The ALJ then posed the following hypothetical:

> Okay, and I'm going to ask that you assume a person of the claimant's age, education, and work experience who is limited to the light exertional level, also limited to no ladders, ropes, or scaffolds; only occasional as to the remaining postural activities; only frequent overhead reaching bilaterally; only frequent handling and fingering bilaterally; limited to simple, routine, repetitive tasks, and a work environment free of fast paced production requirements; can only do simple work related decision making with few if any changes in the work setting; and can only have occasional contact with supervisors, co-workers, and no public contact.

(Tr. 63.) The VE testified such a hypothetical individual would not be able to perform Malec's

past relevant work, but could perform other jobs such as cafeteria attendant (unskilled, light, SVP 2); house cleaner (unskilled, light, SVP 2); and, garment sorter (unskilled, light, SVP 2). (Tr. 64.)

The ALJ then posed a second hypothetical that was the same as the first, but was at the sedentary (rather than light) exertional level. (Tr. 65.) The VE testified such a hypothetical individual could perform jobs such as final assembler (unskilled, sedentary, SVP 2); bench hand assembler (unskilled, sedentary, SVP 2); and, sorter (unskilled, sedentary, SVP 2). (Tr. 65-66.)

The ALJ then posed "the same hypothetical but let's add a sit/stand option to it." (Tr. 66.) The VE testified that, if the sit/stand option was every 30 to 45 minutes, the same three jobs would exist. (Tr. 66.) However, if the sit/stand option was every 20 to 30 minutes, the VE testified there would be no jobs for such a hypothetical individual. (Tr. 66.)

The ALJ then asked "what if your hypothetical person had to be off work at least three days a month due to symptoms from their impairments or side effects from any medications they were taking?" (Tr. 66.) The VE testified such a restriction "would eliminate all the jobs I've identified and all work." (Tr. 66.)

Finally, Malec's attorney asked the VE "if we have an individual who's going to need to take, say three to four unscheduled breaks a work shift, and those breaks would last for about a half hour to 45 minutes, how would that affect a person's ability to maintain employment?" (Tr. 67.) The VE testified such a restriction "would eliminate all jobs." (Tr. 67.)

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason

7

of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[2]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Malec was insured on her alleged disability onset date, November 5, 2009, and remained insured through the date of the ALJ's decision, December 23, 2011. (Tr. 16.) Therefore, in order to be entitled to POD and DIB, Malec must establish a continuous twelve month period of disability commencing between those dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967).

### IV. Summary of Commissioner's Decision

The ALJ found Malec established medically determinable, severe impairments, due to degenerative disc disease, obesity, hypertension, and depression; however, her impairments,

---

[2] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 18-20.) Malec was found incapable of performing her past work activities, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of sedentary work. (Tr. 20-27.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Malec was not disabled. (Tr. 26-27.)

## V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270,

273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

10

**VI. Analysis**

*Sentence Six Remand*

Malec argues she is entitled to a sentence six remand in light of new and material evidence regarding her degenerative disc disease. Specifically, Malec maintains she underwent back surgery on April 10, 2012 and that, during this surgery, it was discovered her back condition was more severe than predicted by the October 2011 MRI in a number of respects. Malec claims the surgical report (which was submitted to the Appeals Council but was not before the ALJ) is material because "it proves that the MRI, which the ALJ considered, did not correctly convey the severity of [her] degenerative disc disease." (Doc. No. 15 at 18.) She also argues this evidence is material because it constitutes "objective evidence" that corroborates her complaints of severe pain, weakness, and balance issues. Finally, she maintains she had good cause for failing to submit this evidence to the ALJ; and, that it "relates back to the time of the hearing." (Doc. No. 15 at 18.)

The Commissioner argues a sentence six remand is not warranted. She argues treatment records dated after the ALJ decision are not material because "they fail to establish that Plaintiff's impairments significantly impacted her ability to work" and, therefore, would not have changed the ALJ's findings. (Doc. No. 17 at 18.) She also argues, summarily, that the "surgical report and any treatment thereafter post-date the ALJ's opinion and do not relate to the relevant time period." (Doc. No. 17 at 18-19.)

The Sixth Circuit has repeatedly held that "evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). A district court can,

11

however, remand the case for further administrative proceedings in light of such evidence, if a claimant shows that the evidence satisfies the standard set forth in sentence six of 42 U.S.C. § 405(g). *Id. See also Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Lee v. Comm'r of Soc. Sec.*, 529 Fed. Appx. 706, 717 (6th Cir. July 9, 2013) (stating that "we view newly submitted evidence only to determine whether it meets the requirements for sentence-six remand"). Sentence Six provides that:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, **but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding**; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

42 U.S.C. § 405(g) (emphasis added).

Interpreting this statute, the Sixth Circuit has held that "evidence is new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster*, 279 F.3d at 357 (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). Evidence is "material" only if "there is 'a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.'" *Id*. (quoting *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988)). *See also Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007) (noting that evidence is "material" if it "would likely change the Commissioner's decision."); *Courter v. Comm'r of Soc. Sec.*, 2012 WL 1592750 at *11 (6th Cir. May 7, 2012) (same). Moreover, "'[e]vidence of a subsequent deterioration or change

12

in condition after the administrative hearing is deemed immaterial.'" *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 478 (6th Cir. 2003) (quoting *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992)). *See also Sizemore*, 865 F.2d at 712 ("Reviewing courts have declined to remand disability claims for reevaluation in light of medical evidence of a deteriorated condition"); *Deloge v. Comm'r of Soc. Sec.*, 2013 WL 5613751 at * 3 (6th Cir. Oct. 15, 2013) (same).

In order to show "good cause," a claimant must "demonstrat[e] a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357. *See also Willis v. Sec'y of Health & Hum. Servs.*, 727 F.2d 551, 554 (1984). "The mere fact that evidence was not in existence at the time of the ALJ's decision does not necessarily satisfy the 'good cause' requirement." *Courter*, 2012 WL 1592750 at * 11. Rather, the Sixth Circuit "takes 'a harder line on the good cause test' with respect to timing, and thus requires that the clamant 'give a valid reason for his failure to obtain evidence prior to the hearing.'" *Id*. (quoting *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)). This includes "detailing the obstacles that prevented the admission of the evidence." *Courter*, 2012 WL 1592750 at * 11. *See also Bass*, 499 F.3d at 513.

The burden of showing that a remand is appropriate is on the claimant. *See Foster*, 279 F.3d at 357; *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010). When a district court grants remand pursuant to sentence six, it "neither affirm[s] nor reverse[s] the ALJ's decision, but simply remand[s] for further fact-finding." *Courter*, 2012 WL 1592750 at * 11. *See also Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). Under these circumstances, the district court retains jurisdiction and enters final judgment only "after postremand agency proceedings have

13

been completed and their results filed with the court." *Shalala v. Schaefer*, 509 U.S. 292, 297 (1993). *See also Melkonyan,* 501 U.S. at 98; *Marshall v. Comm'r of Soc. Sec*., 444 F.3d 837, 841 (6th Cir. 2006).

Malec argues a sentence six remand is warranted based on the following evidence. On April 10, 2012,[3] Malec underwent "left L5 and partial L4 hemilaminectomy with a L5-S1 and partial L4-5 foraminectomy such that the L4-5 and L5-S1 levels are decompressed." (Tr. 640.) In a surgical report dated April 11, 2012, Dr. Bell noted operative findings of "severe stenosis at L4-5 worse that what was predicted by the [October 2011] MRI scan" and, further that "[t]here was also foraminal stenosis involving the left L5 root that was more than what was visible by the MRI scan." (Tr. 640.) In addition, Dr. Bell stated that "there appeared to be more mobility at the L4-5 level than is normal. This was thought to represent potential instability even though there was no radiographic evidence of instability based upon the x-ray." (Tr. 641.)

Malec returned for a follow-up visit with Dr. Bell on May 30, 2012, at which time she complained of "continu[ing] left leg pain going down the lateral thigh to the knee" that "comes on with standing for approximately 15 minutes." (Tr. 642.) Dr. Bell increased her dosage of Neurontin and recommended a follow-up appointment in four weeks. (Tr. 642.) In September 2012, Malec underwent x-rays of her lumbar spine which showed postsurgical changes of laminectomy at L4 and L5; lumbar leviscoliosis centered at L3; diffuse ostopenia; degenerative changes as with space narrowing at L1/2 and L3-S1; and, lower lumbar facet arthropathy. (Tr.

---

[3] Malec states that, although her surgery was initially scheduled for January 2012, it was "pushed back due to evidence of long-standing thrombocytosis and leukocytosis." (Doc. No. 15 at 10.) She maintains she was required to undergo a bone marrow biopsy before being rescheduled for surgery on April 10, 2012. (Tr. 616.)

14

644-645.)

The Court finds the above evidence is "new" and Malec has demonstrated "good cause" for failing to submit it to the ALJ. Malec's surgery was performed after the hearing and ALJ decision. Thus, the surgical report documenting the unexpected severity of her stenosis did not exist, and could not have been prepared, prior to the decision. Moreover, the Commissioner does not argue (and there is nothing in the record to indicate) that Malec's surgery could have been performed prior to the date of the ALJ decision. As opposed to an evaluation that can be done at the request of a patient, Malec's back surgery is a medical procedure that must be justified and ordered by a doctor. Scheduling of such a procedure is also generally outside the control of the patient, as it was here in Malec's case. Indeed, Malec cites evidence indicating her surgery had to be postponed because her doctors required her to first undergo a bone marrow biopsy due to concerns regarding her "long-standing thrombocytosis and leukocytosis." (Doc. No. 15 at 10.)

Thus, the Court finds the post-surgery evidence noted above was "not in existence or available" to Malec at the time of the ALJ decision and is, therefore, "new" for purposes of sentence six of § 405(g). *See Foster*, 279 F.3d at 357. In addition, the Court finds Malec has provided a "valid reason for fail[ing] to obtain [this] evidence prior to the hearing" and, therefore, established "good cause."[4] *See Oliver*, 804 F.2d at 966.

---

[4] It appears Malec also provided the Appeals Council with treatment notes from Dr. Bell dated November 30, 2011. (Tr. 601-605.) As the Commissioner correctly notes, these particular treatment notes pre-date the December 2011 hearing and decision. Malec does not provide any explanation as to why these particular notes could not have been acquired and provided to the ALJ prior to the hearing. However, since the Court finds a sentence six remand is warranted for consideration of the documents regarding her back condition that post-date the ALJ decision, the Court finds the ALJ may consider these November 2011 treatment notes on remand as well.

The Court further finds Malec's post-surgery evidence is "material." In the decision, the ALJ recounts Malec's hearing testimony and the medical evidence regarding her degenerative disc disease, including the September 2011 x-rays and October 2011 MRI. (Tr. 21-24.) With respect to the MRI, the ALJ characterized the results as showing moderate stenosis at L5-S1 and mild stenosis at L4-L5.[5] (Tr. 23.) In finding Malec had not established disability on the basis of her physical impairments, the ALJ relied on the fact that "the objective medical evidence does not provide a basis for finding limitations greater than those determined in this decision." (Tr. 24.) *See also* Tr. 22 (noting that "[t]urning to the medical evidence, the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations"). Additionally, the ALJ found Malec's subjective complaints of disabling symptoms and pain to be not credible, at least in part, because they were "not fully supported by objective medical evidence." (Tr. 24.)

In light of the fact the ALJ specifically relied on the absence of objective medical evidence supporting Malec's claims of disabling pain, the Court finds there is a "reasonable probability" that the April 11, 2012 surgical report would change the decision. This report constitutes objective medical evidence that Malec's degenerative disc disease was more serious than suggested by her October 2011 MRI. Indeed, while the ALJ characterized the MRI as showing mild stenosis at L4-5, Dr. Bell indicates in the April 2012 surgical report that Malec's L4-5 stenosis was, in fact, observed to be severe. (Tr. 640.) Further, the ALJ relied on the MRI's

---

[5] The ALJ also discussed the opinions of Dr. Sioson and Dr. Hinzman, but noted neither of these physicians had considered Malec's 2011 treatment records and objective test results. (Tr. 25-26.) Thus, he accorded "moderate weight" to Dr. Sioson's opinions, and "little weight" to the opinions of Dr. Hinzman. (Tr. 25-26.)

16

indication of moderate stenosis at L5-S1, whereas Dr. Bell found the foraminal stenosis involving the left L5 root "was more than what was visible by the MRI scan." (Tr. 640.) Given that the surgical report recounts Dr. Bell's actual observations and operative findings, there is a reasonable probability the ALJ would find it significant in evaluating Malec's claims. Moreover, Dr. Bell's surgical findings and subsequent treatment notes may also impact the ALJ's evaluation of Malec's credibility. (Tr. 24.)

In addition, the Court rejects the Commissioner's argument that the "surgical report and any treatment thereafter post-date the ALJ's opinion and do not relate to the relevant time period." (Doc. No. 17 at 18-19.) The surgical report calls into question the accuracy of the October 2011 MRI scan, upon which the ALJ relied. (Tr. 24.) Given these unique circumstances, and the fact that Malec's surgery occurred only four months after the decision, the Court finds Malec has established that the post-surgery evidence submitted to the Appeals Council regarding her degenerative disc disease does, in fact, relate back to the relevant time period.

Accordingly, the Court finds this matter should be remanded pursuant to sentence six of 42 U.S.C. § 405(g) for further administrative proceedings.[6]

### VII. Conclusion

For the foregoing reasons, the Court finds a remand pursuant to sentence six of 42 U.S.C. § 405(g) is warranted under the circumstances. Accordingly, the case is REMANDED, pursuant to 42 U.S.C. § 405(g) sentence six, for further administrative consideration of material submitted after the ALJ's decision regarding Malec's degenerative disc disease. This Court retains

---

[6] As this matter is being remanded, and in the interests of judicial economy, the Court will not consider Malec's remaining assignments of error.

17

jurisdiction over the instant matter and shall enter final judgment only "after postremand agency proceedings have been completed and their results filed with the court." *Shalala,* 509 U.S. at 297. *See also Melkonyan,* 501 U.S. at 98; *Marshall,* 444 F.3d at 841.

    IT IS SO ORDERED.

                                            /s/ Greg White
                                            U.S. Magistrate Judge

Date: January 8, 2014